UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MICAH STEPHEN COX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:21-CV-253-JEM |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 13].  Now before the Court are

Plaintiff's Motion for Summary Judgment [Doc. 14] and Defendant's Motion for Summary

Judgment [Doc. 18].  Micah Stephen Cox ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

I.      **PROCEDURAL HISTORY**

On January 25, 2019, Plaintiff filed an application for child's insurance benefits and

supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on January 18,

2020 [Tr. 15, 198, 273, 275].  After his application was denied initially and upon reconsideration,

Plaintiff requested a hearing before an ALJ [Tr. 201–05, 206–10, 216–21, 222–27, 228].  A

---

[1]      Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

telephonic hearing was held on November 18, 2020 [Tr. 34–72]. On December 22, 2020, the ALJ found that Plaintiff was not disabled [Tr. 12–25]. The Appeals Council denied Plaintiff's request for review on May 14, 2021 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on July 17, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions,[2] and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

1. Born on September 1, 1997, the claimant had not attained age 22 as of January 10, 2018, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since January 10, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Becker's muscular dystrophy, obesity, obstructive sleep apnea, anxiety disorder, attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except frequently climb ramps or stairs, can

---

[2]     Plaintiff has also filed a reply brief that the Court has considered [Doc. 21].

2

occasionally climb ladders, ropes or scaffolds, can frequently balance, stoop, kneel, crouch, or crawl, can frequently push/pull with both upper extremities and both lower extremities, can frequently handle, finger, and feel with both upper extremities, should avoid concentrated exposure to workplace hazards, and can perform simple tasks, where changes in the workplace are occasional.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 1, 1997, and was 20 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2018, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

[Tr. 17–25].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

3

544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory

4

claims of error without further argument or authority may be considered waived).

## IV.   DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

5

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff argues that the ALJ improperly evaluated his subjective allegations of disabling mental and physical impairments, which resulted in the ALJ making flawed mental and physical RFC findings lacking the support of substantial evidence. Plaintiff asserts that the ALJ ignored the progressive nature of his muscular dystrophy, failed to appropriately consider the exacerbating effects of all of his impairments in combination, and failed to account for his documented mental and physical deficits when crafting the final RFC. Plaintiff asks the Court to remand this case for the Commissioner to perform a proper assessment of the subjective and objective evidence, including the medical opinion evidence, and to reevaluate his RFC. The Commissioner submits that her final decision should be affirmed because the ALJ appropriately evaluated Plaintiff's subjective allegations of disabling mental and physical impairments, and substantial evidence supports the ALJ's decisions.

For the reasons below, the Court finds that the ALJ properly evaluated Plaintiff's

6

subjective allegations of disabling physical and mental impairments and that substantial evidence supports the ALJ's mental and physical RFC findings.[3]

### A. ALJ's Evaluation of Plaintiff's Subjective Allegations of Disabling Mental Impairments and the Mental RFC Finding

Plaintiff argues the ALJ selectively reviewed the evidence in that she "routinely agreed with any portion of a source statement that is in sync with her own RFC assessment," and "failed to construct any semblance of the requisite logical bridges between the findings she endorsed and her purported accommodation of those findings" [Doc. 15 p. 8]. Plaintiff contends the ALJ's decision is problematic because she failed to account for what she assessed to be moderate limitations in concentration, persistence, or pace and adapting or managing oneself as well as all the documented deficits in interacting which the ALJ assessed as mild. Although Plaintiff does not argue the ALJ should have found his mental impairments rose to a listing level severity at Step Three of the sequential evaluation process, he claims the ALJ provided a flawed assessment of the Paragraph B criteria when determining the applicability of any listing-level impairments. Plaintiff also critiques the ALJ's evaluation and weighing of the opinion evidence.

---

[3]      In his reply brief, Plaintiff also contends that the Commissioner's argument has been "significantly undermined by the SSA's recent decision to grant Plaintiff benefits on a subsequent SSI claim" [Doc. 21 p. 1]. Plaintiff fails to provide any explanation as to how a decision by the SSA related to a *subsequent* claim impacts a district court's review of a *previous* disability decision. As this argument was not raised until Plaintiff's reply brief and because Plaintiff has offered no elaboration or citations to authority in support, the Court finds any argument here to be waived. "[A]rguments not raised and supported in more than a perfunctory manner may be deemed waived." *Warner v. Comm'r of Soc. Sec.*, No. 4:13-CV-46, 2014 WL 3866160, at *6 (E.D. Tenn. Aug. 5, 2014) (citing *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009)).

7

The Court finds the ALJ appropriately assessed Plaintiff's mental impairments and made a mental RFC finding that is supported by substantial evidence. In her decision, the ALJ found Plaintiff's

> [m]edically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

[Tr. 21].

As a threshold matter, a claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. § 404.1545(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 20 C.F.R. § 404.1529(c)(3):

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). In addition,

> [t]he social security regulations establish a two-step process for evaluating pain . . . . In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical

condition is of such severity that it can reasonably be expected to produce such disabling pain.

*Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

The Social Security Administration has clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective March 28, 2016). When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p. *See also Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.*, No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p).

The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain. Those factors are:

> (i) the claimant's daily activities;
>
> (ii) the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii) precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and

9

(vii) other factors concerning the claimant's functional limitations
and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination as to a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). *See also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)). Factual determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

The Court finds substantial evidence supports the ALJ's decision. The ALJ properly considered, among other things, Plaintiff's treatment history, the objective medical evidence, his

10

reported daily activities, and the opinion evidence and prior administrative medical findings pertaining to the alleged mental impairments.

### 1. Plaintiff's Treatment History

The ALJ considered Plaintiff's mental health treatment, which was inconsistent with the alleged severity of his mental impairments [Tr. 18–19]. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v) & 416.929(c)(3)(iv)–(v) (directing consideration of the effect of a claimant's medication and treatment when considering the severity of alleged symptoms). The ALJ acknowledged that Plaintiff received some mental health treatment during the relevant period; however, as noted by the Commissioner, that treatment consisted of infrequent telephone appointments with Plaintiff's psychiatrist, Brian Bonfardin, M.D. ("Dr. Bonfardin") [Tr. 738–39, 856–57]. The ALJ stated that Dr. Bonfardin's notes from March 2019 reflected Plaintiff had been "interactive and talkative with a euthymic mood and that [Plaintiff] was medically stable" [Tr. 18 (citing Tr. 738–39)]. Dr. Bonfardin's treatment notes from September 2020 indicated Plaintiff "was doing well and that he was essentially stable with medications" [*Id.* (citing Tr. 856)]. *See Smith v. Comm'r of Soc. Sec. Admin*. 564 F. App'x 758, 763 (6th Cir. 2014) (explaining that improvement with use of prescription medication supports denial of disability benefits); *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987) (explaining that evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits). The ALJ also noted that consultative examiner Tracy Allred, Ed.D. ("Dr. Allred") reported in examination findings that Plaintiff was being treated with mental health medications [Tr. 18, 635]. Given that discussion, the ALJ considered Plaintiff's allegations of disabling mental impairments to be inconsistent with his treatment and medication history, as Plaintiff was reportedly "doing well" and was "essentially stable with medications" [Tr. 18].

11

## 2. Objective Medical Evidence

The ALJ also considered the objective medical evidence, which was inconsistent with the alleged severity of Plaintiff's mental impairments. *See* 20 C.F.R. §§ 404.1529(c)(2) & 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work."). The Court finds the ALJ appropriately considered the inconsistencies between Plaintiff's subjective allegations and the medical evidence when discounting Plaintiff's allegations concerning the severity of his alleged mental impairments. *See, e.g.*, *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record.").

As stated above, the ALJ considered Dr. Bonfardin's reports from his examinations that Plaintiff had been interactive with a euthymic mood and was otherwise mentally stable [Tr. 18, 23, 738–39, 856–57]. The ALJ also considered the findings of consultative examiner Dr. Allred [Tr. 18]. Dr. Allred examined Plaintiff in August 2016 and reported he was being treated with mental health medications by a psychiatrist [Tr. 18, 635–39]. In April 2019, the ALJ considered that

> Dr. Allred noted [Plaintiff] was oriented with normal speech and that he presented as somewhat depressed. During the mental status exam, [Plaintiff] exhibited normal and logical thought process. He completed serial sevens, he spelled "world" backward, he recalled 3 out of 3 previously named words, and he completed simple calculations.

[Tr. 18 (citing Tr. 786–91)].

Plaintiff points to other evidence possibly supporting further limitations than what the ALJ found in the decision. But the standard of review is whether substantial evidence supports the ALJ's findings, not whether there is substantial evidence that may support contrary findings [Doc. 19 p. 17 (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (an ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion"))]. It appears Plaintiff may also be inviting a reweighing of the evidence in this case but, to the extent he does so, "the court will not reweigh the evidence considered by the ALJ." *Seibert v. Comm'r of Soc. Sec.*, No. 17-13590, 2019 WL 1147066, at *2 (E.D. Mich. 2019) (citing *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

### 3. Plaintiff's Reported Daily Activities

The ALJ considered Plaintiff's reported daily activities as well. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) & 416.929(c)(3)(i) (directing consideration of a claimant's daily activities when considering the severity of alleged symptoms). The ALJ noted that Plaintiff attended college, in-person, in 2018; he would play video games at a friend's house for an hour at a time; he had started a coin collection; prior to the pandemic, he would volunteer to mentor youths; and he could drive, perform light chores, cook, and fish [Tr. 19–20, 40–41, 44, 48, 50–52, 788]. The Court finds there was ample evidence in the record related to Plaintiff's reported daily activities that contradicted the severity of his alleged mental impairments, and it was therefore appropriate for the ALJ to rely on that evidence in formulating the mental RFC.

13

### 4. Medical Opinions and Prior Administrative Medical Findings Related to Plaintiff's Mental Limitations

The Court finds the ALJ appropriately evaluated and considered the mental-health related medical opinions and prior administrative medical findings as well.[4] A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. §§ 404.1513(a)(2) & 415.913(a)(2). When evaluating the persuasiveness of a medical opinion or prior administrative medical finding, the ALJ must articulate how she considered the factors of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c & 416.920c.

The ALJ found Dr. Allred's consultative opinion was generally persuasive [Tr. 23]. In August 2016, Dr. Allred determined Plaintiff had no limitation in understanding and remembering, a mild limitation in interaction with others, a moderate limitation in concentration and persistence, and a moderate limitation in adaptation [Tr. 23, 535–39]. In April 2019, Dr. Allred again determined Plaintiff had no limitation in understanding and remembering, a mild limitation in interaction with others, a moderate limitation in concentration and persistence, and a moderate limitation in adaptation [Tr. 23, 786–91]. The ALJ stated that these opinions were mostly consistent with and supported by the overall evidence of record, including with Dr. Allred's own examination findings and Plaintiff's testimony. In any case and out of an abundance of caution, the ALJ found that Plaintiff had a mild limitation in understanding and remembering. Plaintiff

---

[4] The applicable regulations for the evaluation of medical opinions have been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). As Plaintiff's application was filed after March 27, 2017, the revised regulations apply.

14

argues the ALJ selectively relied on Dr. Allred's consultative opinions to support her flawed evaluation of his impairments. The Court finds this argument is without merit, as the ALJ appropriately articulated how she considered the supportability and consistency of Dr. Allred's opinions in finding them persuasive.

By contrast, the ALJ found Dr. Bonfardin's 2019 medical opinion less persuasive [Tr. 23–24]. Dr. Bonfardin opined that Plaintiff had marked limitations in judgment, which the ALJ found to be inconsistent with and unsupported by Dr. Bonfardin's own records and with the overall evidence of record [Tr. 23 (citing Tr. 797–801)]. For example, the ALJ noted that Dr. Bonfardin reported Plaintiff was doing well and was medically stable, and Dr. Allred had reported that Plaintiff displayed good judgment [Tr. 23]. The ALJ found Dr. Bonfardin's opinion that Plaintiff had greater than mild, and even one area of marked limitation in social interaction, was not supported by the evidence, as Petitioner had testified to volunteering with a church youth group and hanging out with friends to play videogames [Tr. 23–24]. The ALJ found Dr. Bonfardin's opinion was unsupported by and inconsistent with the overall evidence of record to the extent it indicated Plaintiff had a moderate limitation in understanding and remembering simple instructions because Plaintiff testified to driving, he demonstrated logical and normal thought process, he recalled 3 out of 3 previously named words after a brief delay, and he could perform simple calculations [Tr. 24 (citing Hearing Testimony; Tr. 786–91)]. The Court therefore finds the ALJ appropriately evaluated Dr. Bonfardin's opinion, and the ALJ's decision to find it unpersuasive in certain respects is supported by substantial evidence.

The ALJ also considered the prior administrative medical findings of agency psychological consultants Michael Hammonds, Ph.D. ("Dr. Hammonds"), and Leif Leaf, Ph.D. ("Dr. Leaf") [Tr. 24]. Drs. Hammonds and Leaf found that Plaintiff had a mild limitation in understanding,

15

remembering, or applying information and interacting with others and a moderate limitation in concentrating, persisting, or maintaining pace, and adapting or managing oneself [Tr. 24, 143, 168]. The ALJ found these findings were supported by the mental health treatment notes indicating that Plaintiff was doing well and are generally consistent with Dr. Allred's exams and opinions and the other evidence of record; thus, the ALJ found these findings to be persuasive [Tr. 24]. Here too, the Court finds the ALJ's analysis was appropriate, meaning it was appropriate for the ALJ to rely on the prior administrative medical findings as part of her decision.

The Court finds Plaintiff's argument that the ALJ's mental RFC finding was flawed due to alleged errors in the ALJ's analysis of the Paragraph B criteria is without merit, as the Paragraph B criteria pertain to the listing that the SSA considers at Step Three and are thus not part of the RFC finding. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A; SSR 96-8p ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); *see also Wood v. Comm'r of Soc. Sec.*, 2020 WL 618536, at *3 (6th Cir. 2020) ("An ALJ does not necessarily err by finding moderate limitations at step three but excluding those limitations in a 'residual functional capacity' analysis[.]").

The Court finds Plaintiff's contention that the ALJ posed an incomplete hypothetical question to the vocational expert is also without merit. The ALJ posed a complete hypothetical to the vocational expert that contained the same limitations found in the RFC finding, which included only those restrictions and limitations the ALJ found to be consistent with the record. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional

16

limitations that she deemed credible."); *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir 2013) (citations omitted).

The Court finds the ALJ's evaluation of Plaintiff's alleged disabling mental impairments and the subsequent mental RFC finding were appropriate in this case. The ALJ relied on Plaintiff's mental health treatment and medication history, the objective medical evidence, Plaintiff's reported daily activities, and the medical opinions and prior administrative medical findings.

While the record may contain evidence of more severe mental limitations and although Plaintiff would interpret the evidence differently, the Court finds the ALJ's determination was well within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton*, 246 F.3d at 772.

Remand is not warranted for reevaluation of Plaintiffs mental impairments nor for reformulation of Plaintiff's mental RFC.

17

### B.     ALJ's Evaluation of Plaintiff's Subjective Allegations of Disabling Physical Impairments and the Physical RFC Finding

Plaintiff claims the ALJ also erred when evaluating his alleged physical impairments, resulting in a flawed physical RFC finding.  Plaintiff asserts that, by only limiting him to a range of sedentary work with a handful of climbing, postural, and environmental limitations, the ALJ failed to account for the progressive nature of his muscular dystrophy and failed to accommodate for his physical limitations in the physical RFC, specifically regarding his ability to sit for prolonged period and to use his upper extremities.  Plaintiff contends the ALJ's physical RFC finding is contradicted by the overall evidence of record, which Plaintiff claims supports a finding that he has limitations severe enough to completely preclude him from work.

The ALJ, however, appropriately evaluated Plaintiff's alleged disabling physical impairments.  Furthermore, substantial evidence supports the ALJ's evaluation and her finding that Plaintiff's allegations that he could not work due to muscle pain, fatigue, weakness, nausea, and other physical ailments were not entirely consistent with the evidence [Tr. 21].  In evaluating Plaintiff's alleged physical impairments, the ALJ relied on Plaintiff's treatment history, the objective medical evidence, Plaintiff's reported daily activities, and the opinion evidence and prior administrative medical findings pertaining to the alleged physical impairments.

#### 1.     Plaintiff's Treatment History

The ALJ considered Plaintiff's treatment for his physical impairments, which was inconsistent with the alleged severity of his symptoms [Tr. 21–23].  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v)  &  416.929(c)(3)(iv)–(v) (directing consideration of the effect of a claimant's medication and treatment when considering the severity of alleged symptoms).  For example, the ALJ considered that Plaintiff reported experiencing some improvement in his sleep

apnea with CPAP usage despite his reports of fatigue and tiredness [Tr. 21–22]. The ALJ noted that Plaintiff had been followed for cardiomyopathy, but treatment notes indicated Plaintiff was doing well with no complaints and abnormalities and was instructed to schedule a follow-up appointment for a year later with an echocardiogram and later laboratory and radiological studies were generally unremarkable [Tr. 22, 859–62, 867–98].

### 2. Objective Medical Evidence

The ALJ considered the objective medical evidence relating to Plaintiff's muscular dystrophy [Tr. 21]; *see* 20 C.F.R. §§ 404.1529(c)(2) & 416.929(c)(2). For example, the ALJ stated that treatment notes indicated Plaintiff displayed only mild weakness and mild tightness in his right ankle [Tr. 21, 707–11, 803–06]. The ALJ noted that consultative examiner Jeffrey Uzzle, M.D. ("Dr. Uzzle"), reported Plaintiff had "normal strength, no muscle wasting, and appeared to be minimally affected by muscular dystrophy" [Tr. 21, 784]. During Dr. Uzzle's exam, Plaintiff displayed normal gait and station, and he performed all gait maneuvers without difficulty, and he demonstrated full range of motion in all areas along with normal strength, normal sensation, and normal reflexes [Tr. 21, 770–85]. Plaintiff had also reported some improvement in his sleep apnea with CPAP usage [Tr. 21, 803]; *see* 20 C.F.R. §§ 404.1529(c)(3)(v) & 416.929(c)(3)(v) (directing consideration of the effect of a claimant's medication and treatment when considering the severity of alleged symptoms). Plaintiff's long-time neurologist Saila Upadhyayula, M.D. ("Dr. Upadhyayula"), found Plaintiff had full grip strength, a normal gait, could walk on his toes or heels, and tandem walk [Tr. 22, 707, 845–46]. The ALJ also considered Plaintiff's treatment for his cardiomyopathy; in particular, the ALJ noted Plaintiff's cardiologist found that Plaintiff was doing well without specific complaints, he had no symptoms of ventricular dysfunction, and an echocardiogram showed normal systolic function [Tr. 22, 862].

19

### 3. Plaintiff's Reported Daily Activities

The ALJ expressly considered Plaintiff's reported daily activities. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) & 416.929(c)(3)(i) (directing consideration of a claimant's daily activities when considering the severity of alleged symptoms). Those activities included: Plaintiff's ability to drive, ability to play volleyball and other games with a youth group (but noting Plaintiff experienced some fatigue), his ability to play video games and fish, and his ability to perform light chores and prepare simple meals [Tr. 20–22, 51–52, 788].

### 4. Medical Opinions and Prior Administrative Medical Findings Related to Plaintiff's Physical Limitations

The ALJ also relied upon the medical opinions and prior administrative medical findings after appropriately analyzing them pursuant to 20 C.F.R. §§ 404.1520c & 416.920c. For instance, the ALJ credited Dr. Uzzle's examination findings, but she ultimately found that Dr. Uzzle's medical source statement was not restrictive enough [Tr. 22; *see also* Doc. 15 p. 13 (Plaintiff agreeing ALJ was right to find Dr. Uzzle's opinion unpersuasive)]. The ALJ discredited Dr. Uzzle's opined limitations because she found the evidence of record reflected that Plaintiff was more limited than what Dr. Uzzle found [Tr. 22].

The ALJ found the prior administrative medical findings of David Braverman, M.D. ("Dr. Braverman"), did not completely account for Plaintiff's limitations [Tr. 163–64]. Dr. Braverman indicated Plaintiff could occasionally lift and carry up to 20 pounds and could sit, stand or walk up to six hours each during an eight-hour workday [Tr. 163–64]. The ALJ determined this finding was unpersuasive because Dr. Braverman did not have access to the entire medical record, and the record warranted greater limitations for Plaintiff [Tr. 23].

20

As for Dr. Updhyayula, the ALJ found that Dr. Upadhyayula's opinions were more restrictive than necessary [Tr. 22]. Dr. Upadhyayula found in her October 2019 opinion that Plaintiff could lift up to five pounds on an infrequent basis, he could stand for one hour during a workday, he had to elevate his legs, he required bed rest, and he likely would be absent from work on a chronic basis, among other limitations [Tr. 22, 819–20]. Later, in September 2019, Dr. Upadhyayula reported Plaintiff had to avoid repetitive movements, lifting more than twenty pounds, lifting more than five pounds on a repetitive basis, or sitting or standing for more than 45 minutes [Tr. 22, 847]. The ALJ found Dr. Upadhyayula's opinions were mostly unpersuasive because they were inconsistent with Dr. Upadhyayula's own treatment notes, which reflected mostly normal findings [Tr. 22, 707, 845–46]. In addition, Dr. Upadhyayula's findings conflicted with Dr. Uzzle's normal findings and with Plaintiff's reported daily activities [Tr. 22–23, 51–52, 784]. In any case, the ALJ found Dr. Upadhyayula's finding that Plaintiff could not lift more than five pounds on a repetitive basis was adequately supported and consistent with sedentary work [Tr. 23].

The ALJ also considered two letters detailing Plaintiff's treatment issued by his massage therapist, Hannah Jenkins ("Ms. Jenkins") [Tr. 23]. The ALJ noted that Ms. Jenkins did not provide any functional limitations, but the ALJ still found Ms. Jenkins's statements persuasive to the extent that they were consistent with the medical evidence, including the objective medical evidence [*Id.*]. The ALJ stated that, for example, Ms. Jenkins reported small declines in Plaintiff's muscle weakness and range of motion and increasing tightness in his hips, back, neck, and shoulders [Tr. 23, 899]. The ALJ found that Ms. Jenkins letters, in combination with the other evidence of record, supported a finding that Plaintiff could perform sedentary work, as provided in the final RFC [Tr. 23]. Plaintiff offers his own interpretation for how Ms. Jenkins's letters

21

potentially contradict a finding that he could perform sedentary work, but as detailed above, the standard of review is whether substantial evidence supports the ALJ's findings, not whether there is substantial evidence that may support contrary findings. *See McClanahan*, 474 F.3d at 833 (6th Cir. 2006). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton*, 246 F.3d at 772.

As with Plaintiff's objections to the ALJ's evaluations of his alleged mental impairments, while the record may contain evidence of more severe physical limitations and although Plaintiff would interpret the evidence differently, the Court finds the ALJ's determination was within her "zone of choice." *Blakley*, 581 F.3d at 407. The ALJ appropriately considered the objective medical evidence, Plaintiff's treatment history, the opinion evidence and prior administrative medical findings, and Plaintiff's reported daily activities in finding Plaintiff's physical impairments were not as severe as he alleged. Therefore, the Court will not disturb the ALJ's analysis or ultimate physical RFC finding, as ample substantial evidence supports the ALJ's decision.

## VI. CONCLUSION

Plaintiff contends that this Court may not uphold the Commissioner's decisions, even if otherwise supported by substantial evidence, where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right [Doc. 15 pp. 7–8; Doc. 21 p. 2 (citing *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006)]. Plaintiff further contends that the Court cannot uphold the ALJ's decision, even if there is sufficient evidence within the record to support it, if the reasons given by the ALJ fail to build an accurate and logical bridge between the evidence and the result [*Id.* (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)]. Contrary to Plaintiff's argument and for the reasons

22

above, the Court finds that the ALJ's decision conforms to the relevant SSA rules and regulations. The Court finds the ALJ has built the necessary "logical bridge," and substantial evidence supports the ALJ's decision and ultimate RFC determination. *See Holt v. Kijakazi*, No. 2:20-CV-87, 2021 WL 4931918, *10 (E.D. Tenn. Oct. 1, 2021), *report and recommendation adopted*, 2021 WL 4928890.

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 14**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Jill McCook
United States Magistrate Judge

23